UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**LISA W.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:21-cv-00956-TPK

OPINION AND ORDER

## OPINION AND ORDER

    Plaintiff filed this action under 42 U.S.C. §405(g) asking this Court to review a final decision of the Commissioner of Social Security.  That final decision, issued by the Appeals Council on June 29, 2021, denied Plaintiff's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 8) and the Commissioner has filed a similar motion (Doc. 9).  For the following reasons, the Court will **DENY** Plaintiff's motion,  **GRANT** the Commissioner's motion, and direct the Clerk to enter judgment in favor of the Commissioner.

### I.  BACKGROUND

    Plaintiff filed her applications for benefits on November 28, 2018, alleging that she became disabled on July 11, 2018.  After initial administrative denials of that claim, a hearing was held before an Administrative Law Judge on October 6, 2020.  Plaintiff and a vocational expert, Allison Shipp, testified at the hearing.

    The Administrative Law Judge issued an unfavorable decision on January 22, 2021.  She first found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and that she had not engaged in substantial gainful activity since her alleged onset date.  Next, she concluded that Plaintiff suffered from severe impairments including sciatica, post-Lyme syndrome, bilateral hip bursitis and tendinitis, bilateral degenerative joint disease of the feet, obesity, and asthma.  However, the ALJ determined that these impairments, taken singly or in combination, did not meet the criteria for disability under the Listing of Impairments.

    Moving forward with the sequential evaluation process, the ALJ then concluded that Plaintiff had the ability to perform less than a full range of sedentary work.  She could occasionally climb, stoop, crouch, and balance, and could never kneel or crawl.  Also, she had to avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation.

The ALJ further concluded that Plaintiff could not perform her past relevant work as a nurse assistant. However, relying on the vocational expert's testimony, the ALJ determined that, given her vocational profile and with the limitations described above, Plaintiff could perform certain sedentary jobs such as final assembler, document preparer, and order clerk. She also found that these jobs existed in significant numbers in the national economy. As a result, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act.

Plaintiff, in her motion for judgment on the pleadings, has summarized her argument in this way: "The Administrative Law Judge (ALJ) erred evaluating opinion evidence. She improperly found the opinion of Plaintiff's physician not persuasive, while finding non-examining and non-treating opinions persuasive. In making these findings, she did not properly evaluate the supportability or consistency factors for any of these opinions, and gave largely conclusory explanations. These errors left her residual functional capacity (RFC) and decision not supported by substantial evidence." *See* Plaintiff's Memorandum, Doc. 8-1, at 1.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 46 years old at the time of the administrative hearing, first testified that she had last worked on July 11, 2018, as a certified nurse aid, a job she had performed for 25 years. That job involved very heavy lifting as part of her patient care responsibilities. She stopped working due to multiple medical conditions including COPD, asthma, bursitis and tendinitis in her hip, sciatica, fibromyalgia, and lack of concentration.

When asked about her living situation, Plaintiff said that she lived with her husband and daughter and her daughter's two very young children. She said that her husband does the cooking and that she occasionally needed help getting dressed. Plaintiff testified to being in constant pain every day and to difficulty sleeping during the night. Most of the day she spent lying on her couch, but on a good day she was able to play a bit with her granddaughter. She was able to stand or sit in a chair for only five minutes at a time and could not walk a block without resting. She could lift five or ten pounds except when picking up her granddaughter, who weighed 20 pounds. Plaintiff also said she had pain on a daily basis in her shoulder, neck, hips, and back, as well as arthritis in her left knee. She was able to drive herself to doctors' appointments. Finally, she said she had seasonal allergies and used an inhaler on a regular basis.

The vocational expert, Ms. Shipp, first classified Plaintiff's past work as a nurse assistant, stating that it was medium and semi-skilled but very heavy as performed. She was then asked questions about a hypothetical person with Plaintiff's vocational background who could do light work with various postural and environmental limitations. Ms. Shipp said that such a person could not do Plaintiff's past work but could perform a number of light unskilled jobs. If the person were limited to sedentary work, he or she could still do jobs like final assembler, document preparer, and encoder clerk. She also testified that if the person were limited to occasional handling with the right hand, none of those jobs would be available. The

same would be true if the person were off task ten percent of the time, had one unscheduled absence per month, or needed to sit or stand at will, but standing for two minutes after sitting for thirty minutes would reduce but not eliminate the jobs at issue.

### B.  Treatment Records

The pertinent medical treatment records show the following.  Plaintiff began to be treated for right hip pain as early as 2017.  Records from February, 2018 indicate that she had been prescribed various medications for pain and that exercise or activity made the pain worse.  She pursued a course of physical therapy but did not obtain lasting relief.  By October, she was seeing an orthopedic specialist and had been diagnosed with bilateral hip bursitis.  She reported that she was unable to sit or stand for prolonged periods.  She had an injection which did not improve her symptoms.  An MRI was interpreted to show bilateral trochanteric bursitis, hamstring tendinitis, and apohysitis.  Chiropractic treatment was recommended, but Plaintiff said she could not afford it.

In 2019, Plaintiff had blood work done which showed some evidence of Lyme disease and a slightly elevated rheumatoid factor.  She was prescribed antibiotics for Lyme disease.  By August of that year, notes show a diagnosis of fibromyalgia as well as the fact that Plaintiff had been reporting joint pain and stiffness for some time.  She was then referred to a rheumatologist for evaluation of swelling in her legs and numbness, tingling, and pain in her joints.  The examination did not show clear signs of rheumatoid arthritis, and the note indicated she likely had post-Lyme syndrome.  She was also counseled about exercises to address her fibromyalgia.

### C.  Opinion Evidence

Dr. Dave, a consultative examiner, performed an internal medicine examination on March 28, 2019.  Plaintiff told him she suffered from bilateral hip pain and left posterior knee pain as well as back pain, the last of which she had had for years.  On examination, she could walk normally and could rise from a chair without difficulty.  She had some pain and limitation of motion in her lower back.  Dr. Dave thought Plaintiff needed to avoid various environmental irritants due to her asthma and concluded that she had mild to minimal limitations for repetitive crouching and climbing due to soft tissue diagnoses.  (Tr. 632-35).

Dr. Baronos, a state agency reviewer, concluded, in an opinion dated April 12, 2019, that Plaintiff could do light work, could frequently perform most postural activities, and had some environmental restrictions due to her asthma.  (Tr. 101-04).  A second state agency reviewer, Dr. Stouter, concurred in that opinion at the reconsideration level.  (Tr. 129-32).

Plaintiff's treating physician, Dr. Butt, completed a disability form on November 19, 2019, indicating that Plaintiff had diagnoses of post-Lyme disease arthralgia, renal cyst, and fibromyalgia.  The doctor concluded that Plaintiff was very limited in the areas of lifting and carrying, pushing, pulling, and bending, climbing stairs, and functioning in a work setting at a

constant pace, and that she was moderately limited in her ability to walk, stand, sit, and use her hands. (Tr. 898-99). Dr. Butt filled out a similar form on October 15, 2020, noting that Plaintiff had constant pain in her back, hip, and neck made worse by movement and that this pain would interfere with her attention and concentration 100% of the workday. Dr. Butt also thought that Plaintiff could sit or stand for only ten minutes at a time and for less than two hours in a workday, that she could lift less than ten pounds only rarely, that she could rarely or never perform most work-related postural activities, that she could use her hands for less than 25% of the workday, and that she would miss more than four days of work per month. (Tr. 1002-06).

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

### IV.  DISCUSSION

In arguing her sole claim of error, Plaintiff asserts that the ALJ erred when she found the opinions of non-treating and non-examining sources more persuasive that the opinion of Dr. Butt, the treating physician. As to the latter opinion, Plaintiff argues that the ALJ did not properly explain the supportability and consistency factors which are to be applied to all medical

opinion evidence, providing only conclusory rather than specific citations to the record as support for her conclusion. She also faults the ALJ for not considering evidence other than the examination findings and progress notes which are cited in the administrative decision, and for crediting the other opinion evidence without making supportability and consistency findings. The Commissioner, in turn, contends that Plaintiff is simply asking the Court to reweigh the evidence, something that is not consistent with the applicable standard of review.

The ALJ provided this explanation for her evaluation of the opinion evidence. After summarizing the medical records, the ALJ stated that she "was not persuaded by the opinions of Dr. Butt." (Tr. 24). She found that Dr. Butt's conclusions were "not supported by the overall record." *Id*. The inconsistencies she noted included the fact that "the claimant's treatment was limited to conservative measures and routine follow-up monitoring" and the fact that she did not require hospitalization or surgery to address her pain. *Id*. The ALJ also relied on the fact that examination results did not include any "gait abnormalities, hand/finger dexterity issues, or neurological deficits that would support the sitting, standing/walking, manipulative, or postural limitations noted by Dr. Butt." *Id*. By contrast, she was more persuaded by the opinions expressed by Dr. Dave and the two state agency physicians, but believed that more limitations were indicated due to "the claimant's ongoing pain complaints and the restricted range of motion documented in progress notes and Dr. Dave's examination." *Id*. On that basis, she determined that Plaintiff could do only a limited range of sedentary work.

Based on the date on which Plaintiff's application was filed, the 2017 version of the regulations governing an ALJ's analysis of medical opinion evidence applies. *See* 20 C.F.R. §404.1520c. That regulation identifies five factors to be considered: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. As this Court has said,

> [s]upportability and consistency are the most important of the five regulatory factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Accordingly, the ALJ "will explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). The ALJ may, but is not required to, explain how he considered the remaining three factors. *Id*.
> An ALJ's failure to explain the supportability and consistency of the medical opinions or prior administrative medical findings in the record is procedural error. *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Id*. (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alterations omitted).

*Brianne S. v. Comm'r of Soc. Sec.*, 2023 WL 6225249, at *4 (W.D.N.Y. Sept. 26, 2023).

Applying that standard to the facts of this case, the ALJ did discuss those two factors.

She noted, in somewhat conclusory fashion, that Dr. Butt's opinions were "inconsistent with the overall record," but she then expanded on that comment by pointing to the absence of aggressive treatment indicated in the progress notes and the fact that Plaintiff's level of care was inconsistent with the need to be off task for significant periods of time or to incur excessive absences. She also concluded, on the supportability issue, that the absence of findings of gait abnormalities, dexterity issues, or neurological deficits did not support Dr. Butt's conclusions about Plaintiff's exertional and postural limitations. The Court concludes that this discussion both covers the two factors of consistency and supportability and is sufficiently specific to overcome the objection that the discussion was too conclusory to satisfy the ALJ's obligation to explain how she determined that Dr. Butt's opinions were not persuasive. *Cf. Ricky L. v. Comm'r of Social Security*, 2022 WL 2306965 (W.D.N.Y. June 27 2022). As a result, and given that this is the only claim raised in Plaintiff's motion, the Court finds no procedural error here, and therefore will affirm the Commissioner' decision.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 8), **GRANTS** the Commissioner's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**